UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORREY MITCHELL,<br><br>                              Plaintiff,<br><br>v.<br><br>LT. G. HOPPER, et al.,<br><br>                              Defendants. | Case No.: 19cv6-JLS-LL<br><br>**REPORT AND RECOMMENDATION FOR ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (2) DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**<br><br>**[ECF No. 13]** |

This Report and Recommendation is submitted to United States District Judge Janis Sammartino pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. Currently before the Court are Defendants' Motion for Summary Judgment [ECF No. 13 ("Mot.")], Plaintiff's Opposition [ECF No. 15 ("Opp,")], and Defendants' Reply [ECF No. 20 ("Reply")]. For the following reasons, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED.**

## PROCEDURAL BACKGROUND

On January 2, 2019, Plaintiff Correy Mitchell, a state prisoner proceeding *pro se* commenced this action under the Civil Rights Act, 42 U.S.C. § 1983. ECF No. 1

("Compl."). On January 25, 2019, the Court granted Plaintiff IFP status. ECF No. 3.

On September 27, 2019, Plaintiff filed a First Amended Complaint. ECF No. 12 ("FAC"). On October 23, 2019, Defendants filed a Motion for Summary Judgment alleging Plaintiff failed to exhaust his administrative remedies. See Mot. The Court subsequently issued a Scheduling Order. ECF No. 14. On November 18, 2019, Plaintiff filed a Response to Defendants' Motion for Summary Judgment. ECF No. 15. On November 25, 2019, the Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) and a modified briefing schedule. ECF No. 16.

On January 16, 2020, Defendants filed a Reply. ECF No. 20. On January 21, 2020, Plaintiff submitted an Opposition to Defendants' Statement of Uncontroverted Facts, which the Court accepted on discrepancy on January 27, 2020. ECF Nos. 22, 23.[1]

## FACTUAL BACKGROUND

### I. May 21, 2015 Incident

Plaintiff is an inmate incarcerated by the California Department of Corrections and Rehabilitation ("CDCR"). ECF Nos. 13-3 at 2; 23 at 1. At all relevant times, Defendants were CDCR officers employed at Centinela State Prison. Id.

In his First Amended Complaint, Plaintiff alleges Defendants violated his First, Eighth, and Fourteenth Amendment rights during an attack on Plaintiff while he was

---

[1] On January 6, 2020, Plaintiff separately filed a Motion for Leave to File a Second Amended Complaint. ECF No. 18. Plaintiff sought leave to: (1) add an additional defendant—Dr. K. Kari—who Plaintiff alleged failed to properly diagnose an injury to his ear; and (2) additional facts to support his alleged injuries and increase compensatory and punitive damages. Id. at 1-2.

On April 7, 2020, the Court denied Plaintiff's Motion for Leave without prejudice, holding that Plaintiff's proposed amendments would be futile if Plaintiff had not exhausted his administrative remedies, but that Defendants' Motion for Summary Judgment was the more proper vehicle for resolving the question of whether Plaintiff had done so. ECF No. 25 at 2-3.

housed at Centinela. See FAC. Specifically, Plaintiff alleges that on May 21, 2015, he was "attacked by other inmates" and "stabbed [nine] times with inmate manufactured knives." Id. at ¶ 9. Plaintiff alleges Defendant Officers S. Leal and A. Danial witnessed the attack. Id. at ¶ 10. Plaintiff alleges he heard Officer Leal yell: "go ahead and get it out of your system, guys" and that "Plaintiff heard no alarm or any orders to get down by any officer in the building[.]" Id.

Plaintiff alleges that during the attack, Officer R. Luna fired a 40mm non-lethal weapon at him which "knocked Plaintiff from his feet and tore a hole in Plaintiff's right calf." Id. at ¶ 11. Plaintiff alleges that he "landed on his stomach" and his attackers "jumped on his back and continued stabbing him in the back and the back of the head." Id.

Plaintiff alleges that at this point he "heard the alarm on the building activate at which point he "sprang to his feet away from [his attackers] towards the stairs hoping C/O Lea[l] or C/O Dani[a]l would intervene[.]" Id. at ¶ 12. However, Officers Leal and Danial allegedly "gave no verbal orders" and did not act "in any physical way" to stop the attack. Id.

Plaintiff alleges that Officer Luna fired another round from the 40mm weapon which struck Plaintiff in head. Id. at ¶ 13. Plaintiff alleges that he suffered permanent hearing damage in his left ear as a result. Id. Plaintiff further alleges the impact from this shot put him "down on his hands and knees" in front of the stairs where he continued to be attacked. Id. at ¶¶ 13-14. Plaintiff alleges that Officer Danial then sprayed Plaintiff's face with OC (Oleoresin Capsicum) spray, at which point Plaintiff was "stabbed in the face and behind the right ear." Id. at ¶ 14. Plaintiff alleges that Officer Danial did not utilize the OC spray on any of Plaintiff's attackers. Id.

Plaintiff alleges that once the assault stopped, Officer Leal stated: "[t]his is what happens when you write staff complaints, we don't come when you need us." Id. at ¶ 16. Officer Danial allegedly also referenced Plaintiff's job title as Secretary of the Men's Advisory Committee—"Mr. Mac Rep." Id.

Plaintiff alleges that when he returned to a "proper state of awareness" he was at a crisis bed in the mental ward where he was told he suffered a "mental breakdown due to the incident." Id. at ¶ 17.

Plaintiff alleges: (1) no pictures were taken of his injuries; (2) no pictures were taken of the crime scene; and (3) his attackers were left on the tier unattended thereby giving them the opportunity to discard the weapons they had used against him. Id. at ¶ 18.

Plaintiff alleges Defendant Officer G. Hopper—acting as Officers Luna, Leal and Danial's supervisor—was responsible for their training, was personally aware of their unlawful conduct, but failed to correct their actions. Id. at ¶¶ 19-20.

## II. Plaintiff's Inmate/Parolee Appeal (CEN-X-15- 00893)

On or about June 21, 2015, Plaintiff submitted a CDCR 602 Inmate/Parolee Appeal claiming "failure to protect/unnecessary force." ECF No. 13-2 at 12. The Inmate/Parolee Appeal—Appeal Log No. CEN-X-15-00893—was received by officials at Centinela on or about July 6, 2015. ECF Nos. 13-3 at 3-4; 23 at 2. Plaintiff requested that the May 21, 2015 incident be investigated, that he be given all non-confidential reports about the incident, and that he receive $10,000 from each responsible officer. ECF Nos. 13-3 at 4; 23 at 2.

### a. Telephonic Interviews with Officer L. Vega

On or about July 22, 2015, Officer L. Vega conducted a telephonic interview with Plaintiff. ECF No. 13-2 at 10. Officer Vega informed Plaintiff that the monetary compensation he was seeking was outside of the scope of a First Level Review. Id.

### b. First Level of Review

On August 6, 2015, Plaintiff's grievance was partially granted at a First Level of Review in that an inquiry was completed, but finding that staff did not violate CDCR policy. ECF Nos. 13-3 at 4; 23 at 2.

### c. Second Level of Review

On or about September 3, 2015, Plaintiff submitted his Second Level appeal. ECF Nos. 13-3 at 5; 23 at 2. Plaintiff stated he was "completely dissatisfied" with the First

Level Response. Id. On October 22, 2015, Plaintiff's grievance was partially granted on the Second Level of Review. ECF Nos. 13-3 at 5-6; 23 at 2. The appeal was partially granted in that an inquiry was completed, but staff was not found to have violated CDCR policy. Id.

### d. Third Level of Review

Plaintiff did not submit his Appeal Log No. CEN-X-15-00893 to the Third Level of Review. ECF Nos. 13-3 at 6; 23 at 2. Plaintiff has not submitted any appeal to the Third Level of Review regarding his claims against the Defendants in this action. Id.

## LEGAL STANDARD

### A. The Summary Judgment Standard

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when, under the governing substantive law, it could affect the outcome of the case." Brown v. City of San Diego, 2018 U.S. Dist. LEXIS 185838, at *6 (S.D. Cal. Oct. 30, 2018) (citations omitted). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

The moving party has the initial burden of demonstrating that summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Jones v. Williams, 791 F.3d 1023, 1030-31 (9th Cir. 2015).

The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. Celotex, 477 U.S. at 322-24. The opposing party "may not rest upon mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citation omitted).
///

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Id. at 255 (citation omitted). "[I]f direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987)).

"Courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "This rule exempts *pro se* inmates from strict compliance with the summary judgment rules, but it does not exempt them from all compliance. Soto v. Unknown Sweetman, 882 F.3d 865, 872 (9th Cir. 2018) (emphasis in original).

**B.   Exhaustion**

    **a.   The Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") of 1995 provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available, are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion is a mandatory prerequisite to filing suit in federal court. Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

In the Ninth Circuit, a motion for summary judgment is generally the appropriate vehicle for raising the plaintiff's failure to exhaust administrative remedies. Albino v. Baca, 747 F.3d 1162, 1170-71 (9th Cir. 2014). The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust. Id. at 1172. If the defendant meets that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id.

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with applicable procedural rules,'" defined by the specific prison grievance process in question. Jones, 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88).

### b.   The CDCR's Grievance Process

The inmate may initiate litigation in federal court "only after the administrative process ends and leaves his grievances unredressed." Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).

At the time Plaintiff's Complaint was filed, the CDCR provided its prisoners the right to administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a).[2] The inmate appeals process was limited to three levels of review with provisions allowing the First Level to be bypassed under specific circumstances. See id.

---

[2] "Exhaustion requirements apply based on when a plaintiff files the operative complaint, in accordance with the Federal Rules of Civil Procedure." Jackson v. Fong, 870 F.3d 928, 935 (9th Cir. 2017); see Rupe v. Beard, No. CV-08-2454-EFS (PC), 2013 U.S. Dist. LEXIS 80041, at *44 (E.D. Cal. June 3, 2013) ("[A]n inmate's exhaustion of a claim—or failure to do so—is determined at the time the claim is first asserted in the action.").

at § 3084.7. If a prisoner was not satisfied with the response he receives at the First Level of Review, he could submit his appeal to the Second Level of Review, after which he could appeal to the Third and final level. Id.

According to the CDCR's regulations at the time:

> Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, which is incorporated by reference, and addressed through all required levels of administrative review up to and including the third level.

15 Cal. Code Regs. § 3084.1(b).

## ANALYSIS

Plaintiff does not contest that he did not submit Appeal No. CEN-X-00893 or any grievance regarding his claims against Defendants in this action to a Third Level of Review prior to filing this action. See ECF Nos. 13-3 at 6; 23 at 2 (uncontested that "Plaintiff did not submit his Appeal Log No. CEN-X-15-00893 to the Third Level of Review" and "Plaintiff has not submitted any appeal to the Third Level of Review regarding his claims against the Defendants in this action").

Instead, Plaintiff argues that although his grievance was only "partially granted" at the Second Level—"nothing Plaintiff requested was deni[ed]." Opp. at 7. Plaintiff avers the one thing not provided to him was monetary compensation, which he had been told was "beyond the scope of the appeals process[.]" Id. For these reasons, Plaintiff argues his appeal was actually "fully granted" and he was not required to exhaust further levels of review—citing the Ninth Circuit's decisions in Harvey v. Jordan, 605 F.3d 681 (9th Cir. 2010) and Brown v. Valoff, 422 F.3d 926 (9th Cir. 2001). Id. at 7, 9.

Plaintiff's arguments are unavailing. First, Plaintiff's contention that he was not required to submit his grievance to the Third Level because monetary compensation is outside the scope of the CDCR's grievance process is directly contradicted by Supreme

Court precedent. "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter v. Nussle, 534 U.S. 516, 524 (2002) (citation omitted); see also Booth v. Churner, 532 U.S. 731, 740-41 (2001) ("Congress's imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms.").

Second, Plaintiff's contention he was satisfied with the results of his Second Level review, by itself, is not sufficient to excuse his failure to exhaust his administrative remedies. The partial grant of Plaintiff's appeal at the Second Level informed Plaintiff only that an inquiry had been completed and no staff misconduct was found. ECF Nos. 13-3 at 4, 5-6; 23 at 2. "Because such inquiry was not resolved in his favor, plaintiff had yet to receive relief." Cunningham v. Ramos, No. C 11-0368 RS (PR), 2011 U.S. Dist. LEXIS 85997, at *9 (N.D. Cal. Aug. 3, 2011) (finding plaintiff was not afforded relief when a second level of review referred only to the fact that an investigation was conducted and no staff misconduct was found).

In this way, Plaintiff's case is distinguishable from the Ninth Circuit decisions he invokes. In Harvey v. Jordan, plaintiff requested a hearing and specific videotape evidence in connection with disciplinary charges levied against him for his alleged failure to comply with a cell search. 605 F.3d at 684-85. Prison officials granted plaintiff's request that he be given a hearing and access to the videotape. Id. When the promised relief was not forthcoming, plaintiff filed a second "reminder grievance." Id. at 685. The Ninth Circuit held that plaintiff had properly exhausted his administrative remedies "when the prison officials purported to grant relief that resolved his due process grievance to his satisfaction." Id. at 686.

In contrast, in this case, "[b]ecause the investigation resulted in the conclusion that the staff members in question had not violated CDCR policy, [P]laintiff had yet to receive a favorable ruling to satisfy the exhaustion requirement as was the case

9

in Harvey." Cunningham, 2011 U.S. Dist. LEXIS 85997, at *9-10; see also Uribe v. Shinnette, No. 2:18-cv-0689 JAM DB P, 2019 U.S. Dist. LEXIS 86425, at *22 (E.D. Cal. May 21, 2019) (distinguishing Harvey where "the conclusion reached was that staff had violated no prison policy."); adopted in Uribe v. Shinnette, No. 2:18-cv-0689 JAM DB P, Dkt. No. 62 (September 24, 2019). In other words, Plaintiff's "[m]ere contention of satisfaction is not sufficient[.]" Cunningham, 2011 U.S. Dist. LEXIS 85997, at *10; cf. Smith v. Cruzen, No. 14-CV-4791-LHK (PR), 2017 U.S. Dist. LEXIS 222552, at *26 (N.D. Cal. May 2, 2017) (no indication additional relief was available after Second Level review found investigation was completed and staff was found to be in violation of religious policy).

Indeed, the evidence on the record undermines Plaintiff's allegation that he was satisfied with the CDCR's Second Level Response. It is undisputed that Plaintiff submitted his Second Level Appeal stating he was "completely dissatisfied" with the First Level Response. ECF Nos. 13-3 at 5; 23 at 2. Specifically, Plaintiff stated in his Second Level Appeal that: he was "not provided [a] reasonable amount of time" to review the May 21, 2015 incident report. ECF No. 13-2 at 13. Plaintiff further stated that it was "obvious that staff did not do their jobs properly" and "attempted to cover up staff's misconduct by falsifying state documents[.]" Id. at 15.

The First Level and Second Level Responses identically provided that Plaintiff's grievance was "partially granted" in that an appeal inquiry had been performed and a conclusion reached staff did not violate CDCR policy. ECF Nos. 13-3 at 4, 5-6; 23 at 2. Given these near-identical results, it is not clear why Plaintiff would be "completely dissatisfied" with the CDCR's First Level Response, but then subsequently satisfied with CDCR's Second Level Response.

Plaintiff's case is also distinguishable from the Ninth Circuit's Brown v. Valoff decision. In Brown, the Ninth Circuit concluded plaintiff had exhausted his administrative remedies after the CDCR informed him that his appeal would be designated as a "Staff Complaint" and a "thorough investigation would be conducted

through the Office of Internal Affairs[.]" 422 F.3d at 937. The memorandum "did not counsel that any further review was available." Id. For these reasons, the Ninth Circuit found plaintiff could "reasonably have so understood the communications to him" as a "strong indication that no further relief was 'available' other than the staff complaint investigation and (confidential) result." Id. at 938.

The "[i]nformation provided the prisoner is pertinent because it informs [the Court's] determination of whether relief was, as a practical matter, 'available.'" Brown, 422 F.3d at 937. In contrast to Brown, here, Plaintiff was repeatedly advised at both the First and Second Levels of Review that: "[a]llegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process." ECF No. 13-2 at 7, 11. Plaintiff was further advised that if he wished to appeal his decision and exhaust his administrative remedies, he "must submit [his] staff complaint appeal through all levels of appeal review up to, and including, the Secretary's Level of Review." ECF No. 13-2 at 7-8, 11; see Cooper v. Montoya, No. 2:18-cv-07697-SJO-JDE, 2019 U.S. Dist. LEXIS 203617, at *14-15 (C.D. Cal. Oct. 16, 2019) (distinguishing Brown where "Plaintiff was advised during the administrative review process that further review was available.") adopted in Cooper v. Montoya, No. 2:18-CV-07697-SJO (JDE), 2019 U.S. Dist. LEXIS 203490 (C.D. Cal. Nov. 19, 2019); Vaughn v. Hood, No. 2:14-cv-2235 MCE KJN P, 2015 U.S. Dist. LEXIS 111228, at *28 (E.D. Cal. Aug. 20, 2015) (distinguishing Brown where "the second level appeal response in plaintiff's case specifically advised him that he must submit his staff complaint appeal up to, and including, the Secretary's/Third Level of Review[.]"); affirmed by Vaughn v. Hood, 670 F. App'x 962 (9th Cir. 2016).

The Court further notes that at the time of Plaintiff's grievance, the CDCR had amended its regulations with regards to staff complaints. See Cal. Code Regs. tit. 15 § 3084.9 ("A staff complaint filed by an inmate or parolee shall be processed as an appeal[.]"). Put more simply, unlike in Brown, nothing suggests that the CDCR "lacked any remaining authority to act on the subject of the complaint through the grievance

procedure." Brown, 422 F.3d at 937 (citation omitted); see Williams v. Just, No. 2:18-CV-0740-MCE-DMC-P, 2020 U.S. Dist. LEXIS 56463, at *35 (E.D. Cal. Mar. 30, 2020) (distinguishing Brown pursuant to change in CDCR governing directives); Cooper, 2019 U.S. Dist. LEXIS 203617, at *15-16 (same).

For the foregoing reasons, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's First Amended Complaint be dismissed without prejudice. See Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) overruled on other grounds by Albino, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

The Court **FURTHER RECOMMENDS** that the dismissal be without leave to amend. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); see Nichols v. Logan, 355 F. Supp. 2d 1155, 1157 (S.D. Cal. 2004).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation, (2) granting Defendant's Motion for Summary Judgment; and (3) dismissing Plaintiff's First Amended Complaint without prejudice and without leave to amend.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than July 24, 2020**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than August 7, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated: July 1, 2020

Honorable Linda Lopez
United States Magistrate Judge